Boswoeth, J.
TRe wRole object of this action is, to obtain tRe judgment of tRis court, enjoining tRe defendants from pub-lisRing a sofltary letter, wRicR tRe plaintiff wrote to Mr. Crowell, on tRe 18tR of June, 1858. TRe complaint alleges tRat “ it was wRolly private in its cRaracter, and was not intended for publication in any event.” TRe complaint does not state tRat tRe letter possesses any value or merit as a literary production, or otRer-wise, nor tRat tRe publication of it would be a damage to tRe plaintiff, or any annoyance to tRe feelings of any one living, or reflect on tRe memory of tRe dead.
*597 The case, therefore, presents the naked question, whet court will take jurisdiction of an action to restrain i of any and every letter which one man may the sole and naked ground that it was private''' and was not intended for publication in any e^ not pretended that it possesses any literary merit, nor that its publication would produce the sli| annoyance to any person whatever.
The argument of the plaintiff’s counsel asserts, “ tüaftñere exists a right of property in private letters, independent of their literary merit or pecuniary value, capable of protection in equity against threatened infringement or violation.” If such a property exists, it is evident that it must be a mere fiction with respect to all letters possessing no literary merit, nor pecuniary value.
In Wetmore v. Scovell, (3d Edw. Ch. R. 515,) the whole subject was carefully examined by Vice-Chancellor McCoun, and all the English cases were fully and critically reviewed by him, and he held, that the Court of Chancery would not interfere by injunction, to prevent the publication of private letters, possessing no attribute of literary composition, notwithstanding they were written in confidence, and the publication might wound the feelings of the writer. The publication of the letters sought to be enjoined in that case, would be a more marked violation of the courtesies and decencies of life, and certainly as gross an abuse of private confidence, as the publication of the letter in question. In deciding Wetmore v. Scovell, Vice-Chancellor McCoun said: “But of one thing I am quite confident; as a Judge appointed to administer the preventive and remedial justice which legitimately belongs to this court to be administered — that the grievance as presented by this bill of complaint, is not such as the court can judicially take cognizance of, as a ground of jurisdiction on which to interpose and prevent the publication of the letters.”
It is nearly thirteen years since that decision was made, and it was made after that able Judge had had eleven years of official experience in the exercise of chancery jurisdiction.
In Brandreth v. Lane, (8 Paige, 24,) the chancellor intimated a similar opinion, and declared that, “ The utmost extent to which, the Court of Chancery has ever gone, in restraining^ssa^jmblica *598 tion bj injunction, has been upon the principle of protecting the rights of property.”
In Hoyt v. McKenzie and others, (3 Barb. Ch. R. 320,) the precise question came before the chancellor, on an appeal from an order of a vice-chancellor, enjoining the publication of private letters which the plaintiff had written, and which were alleged to have been surreptitiously taken from his possession, after they had been restored to him by the persons to whom they were written. The chancellor reversed the order appealed from. He observes, that “ a letter cannot be considered of value to the author, for the purpose of publication, which he never would consent to have published, either with or without the privilege of copyright. It would, therefore, be a perversion of a correct legal ¡principle to attempt to restrain the publication of these letters, upon the ground that the writers thereof had an interest in them as literary property..But this court has no jurisdiction to restrain and punish crime, or to enforce the performance of moral duties, except so far as they are connected with the rights of property. The vice-chancellor, in the case of Wetmore v. Scovell, (3 Edw. Ch. R. 515,) very correctly decided that the Court of Chancery could not properly exercise a power to restrain the publication of private letters, on the ground of protecting literary property, where they possessed no attribute of literary composition.”
This court does not possess equity jurisdiction coextensive with that vested in the late Court of Chancery. But its equity powers are as extensive, in the actions of which it has jurisdiction, as were those of the Court of Chancery in relation to the same actions.
As to the class of actions of which it has jurisdiction, it has been intrusted with the administration of equity jurisprudence, as fully and completely, as was the late Court of Chancery. The extent of the jurisdiction of the Court of Chancery of this state, in this ¡class of cases, as expressly and formally determined by the court ijtself, has already been stated.
'⅛1 cannot accede to the propriety or expediency of overruling ;the ¡’deliberate decisions of the late Court of Chancery on that tpóiat,- onrthe' ground that both the chancellor and the vice-chan-tCellor of ithe first circuit, failed to comprehend the grounds on '.which .the English decisions, so fully canvassed in their opinions, *599 proceeded. I think any court succeeding to the exercise of only a part of the powers, so long and so ably exercised by them, should not unnecessarily do it, especially in a case which calls for the protection of no property, except such as exists only by fiction of law, if at all, and in a case, too, in which it is not alleged that the doing of the act sought to be prohibited would either wound the feelings of any one, or occasion the author a particle of pecuniary loss.
If the maxim, de minimis non curat lex, is to be applied 'to any case, as a ground of declining to take cognizance of a cause, it may properly be opposed to an effort to secure the Interposition of the court, to restrain the publication of a solitary letter, which as far as the complaint shows, has no literary merit, is of no actual value, and the publication of which would not be productive of injury, nor offend the most delicate sensibility.
To assert such a jurisdiction by exercising it, and to assert and exercise it, in utter disregard of the decisions of the late Court of Chancery that it had no jurisdiction of such a case on such a state of facts, is equivalent to deciding that this court has jurisdiction, and will exercise it, to restrain by injunction the publication of any and every letter, no matter what it may be, or to what it relates, and although it has no merit as a composition, nor any actual value, if it only appears that “it is wholly private in its character, and was not intended for publication in any event.”
It seems to me, that any court, whose time is insufficient to dispose of the important business interests involved in litigations, which are before it, and pressing for a hearing and determination, would alike consult its dignity and duty, by declining to take jurisdiction of such a case as is made by the complaint, on the ground of stare decisis.
When a principle has been once deliberately adopted and declared, it ought not to be disturbed, as a general rule, unless by a court of appeal or review, and never by the same court except for very urgent reasons, and upon a clear manifestation of error. If the practice were otherwise, the community would be left in a state of perplexing uncertainty as to the law.
Conceding that an author, at common law, has a properly in his manuscript, and may obtain redress when any one attempts to. deprive him of it, by endeavoring or threatening to publish it, *600 it is at least a grave question, whether, since Congress has legislated upon the subject, any state court has jurisdiction of an action to restrain a publication. (Dudley v. Mayhew, 3 Coms. 9.) But even if it be supposed that the jurisdiction of the state and federal courts is co-ordinate, on what ground can it be exercised by the state courts ? If jurisdiction is to be exercised, and on the ground that, in judgment of law, the writer of a letter has a property in it, and that this court is competent to enjoin any invasion of that property, or interference with it by others, then the question arises, whether, on such a state of facts, as. the papers before us present, the statute has not forbidden the court to exercise jurisdiction. The letter in question is not alleged to be of any actual value, nor is it averred that any actual damage will result from publishing it.
The Revised Statutes declare that “ the Court of Chancery shall dismiss every suit concerning property, where the matter in dispute, exclusive of coste, does not exceed the value of one hundred dollars, with costs to the defendant.” (2 R. S. 173, § 37.)*
Prior to the enactment of this statute, it was the settled law of that court, that it would not entertain jurisdiction of a cause where the matter in controversy, and for which the suit was *601 brought, was not of a value equal to £10 sterling. It was so held, on a bill filed to recover $28 interest due on a legacy, notwithstanding an answer had been put in, admitting assets, and offering to pay the interest, as the court shall direct. (5 J. Ch. R. 276; Fullerton v. Jackson.) Neither could that court take jurisdiction of an action to foreclose a mortgage, on which less than $100 was due. (2 Paige, 323, Denio v. Selden.)
It will not be pretended, I presume, that the statutory restriction referred to, is not controlling upon the present Supreme Court, and this court.
If it be conceded that, although the plaintiff may have a property in the letter, in consequence of his having composed it, yet that the property is of no actual value, then it follows, that if the Court of Chancery can take jurisdiction of an action to prevent any interference with his property, notwithstanding the statute, it must be on the broad ground, that- it is competent to interfere by injunction, to prevent breaches of private confidence, and social duty, although such breaches of duty infringe no rights of property possessing actual value.
There may be breaches of private confidence and social duty, so gross as to justly subject the offender to the contempt of all right-minded men, but I am not aware of any principle of equity jurisdiction, which authorizes the Court of Chancery to prohibit them by injunction, and to punish the offender, for a contempt of court, if he disobeys it. Jurisdiction cannot be taken in this case, on the ground that its exercise is necessary to prevent irremediable mischief or injury. It is not pretended, in the complaint, that any injury of any kind, will be produced by publishing the letter.
Neither can jurisdiction be exercised on the ground that, by publishing the letter, the defendant wifi, be guilty of a breach of trust, which the court can restrain by injunction. It is not alleged that he received the letter upon any trust, nor that it was written upon any trust or confidence, or with any intent that the person to whom it was sent would not make its contents known to others. If there was any trust, it was one, according to the theory of the plaintiff’s case, relating to property, and the property is not alleged to possess any actual value. The court cannot presume it worth $100. In an action to recover possession of it, if the *602 paper as well as the composition were the plaintiff’s property, a jury could not assess its value at over six cents, without proof that it was worth more. And in suits concerning property, the statute is peremptory, that, if the matter in dispute, or, in other words, if the property sought to be protected, or the damages to be recovered, or the injury to be averted, is not of the value, or does not amount to $100, the suit must not only be dismissed, but the plaintiff must be ordered to pay the costs.
I think the injunction should be dissolved on the following grounds:
, First. It was deliberately adjudged by the late Court of Chancery, that it had no jurisdiction of such an action as this, on such a state of facts as is presented by this complaint. There are no reasons arising from the facts of the case, as they are presented by the papers before us, of such cogency or importance as to justify this court in reviewing and reversing the judgment of the Court of Chancery.
Second. As the action is brought to restrain the publication of only a single letter, which is not alleged to possess literary merit, or actual value, and the publication of which, it is not averred, would either produce damage, offend good taste, or wound the susceptibilities of any one, the court is precluded by statute from taking jurisdiction of it. It has no jurisdiction of actions purely equitable, and relating to property, unless the matter in controversy, exclusive of costs, exceeds $100 in value.
Third. That even if it was alleged and not denied, that the publication of the letter would wound the feelings of the author, however gross and censurable the breach of confidence and good morals involved in making the publication, neither this court nor any other has jurisdiction of an action to restrain an act merely on the ground that it would violate the decencies and courtesies of life, or be an abuse of private confidence, unless the act will affect property of the value, or produce injury amounting to over $100.
Fourth. It is extremely doubtful, in the. most favorable view of the merit of the case which can be taken for the plaintiff, whether a state court can now take jurisdiction of an action like the present.

 This objection to the jurisdiction of the court, is not stated in the answer of the defendants, nor was it taken by their counsel upon the argument; and it was, therefore, not adverted to in the opinion of the court. It seems proper, however, now to state, that it was considered in the consultation of the Judges, and that all the Judges who concurred in the judgment delivered, were of opinion, that the statutory provision is not applicable at all, where the only relief sought by a. complaint is a perpetual injunction; in other words, is only applicable where specific property, or a debt or damages are sought to be recovered. The jurisdiction of the Court of Chancery in England, is subject to a limitation similar to that imposed by our statute, (£10 sterling,) but in none of the reported cases is an intimation to be found, that a bill filed to restrain the publication of private letters, must contain an averment of their pecuniary value, and it is obvious, that to require such an averment, is to place it in the power of the defendant, by denying its truth, to compel the production of the letters, and thus, by enforcing their publication, defeat the only object of the suit. Indeed, the objection that private letters, the unauthorized publication of which is sought to be restrained by an injunction, possess no pecuniary value, is only a different form of stating the objection that they do not possess “ the attributes of literary compositions,” and hence it was plainly overruled by Lord Eldon, when he retained the injunction in a case, in which it wa3 expressly admitted that the letters of the plaintiff, as literary compositions, had no merit or value whatever. (Supra, p. 403.)